IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN JACKSON,

    Petitioner,　　　　　　　　　　　　　　No. CIV S-06-2646 LKK CHS P

  vs.

ROBERT A. HOREL, et al.,

    Respondent.　　　　　　　　　　FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner Kevin Jackson is a state prisoner proceeding pro se with an amended petition for writ of habeas corpus brought pursuant to 28 U.S.C. §§ 2254. Petitioner stands convicted of kidnaping for robbery and is currently serving a sentence of life with the possibility of parole pursuant to a judgment of the Los Angeles County Superior Court. Petitioner does not challenge the constitutionality of his conviction, but rather, the execution of his sentence, and specifically, the April 7, 2005 decision of the Board of Parole Hearings ("Board") finding him unsuitable for parole. For the reasons that follow, petitioner is not entitled to relief. The Board's decision that he was unsuitable for parole was supported by some evidence in the record and did not violate his due process rights. Additionally, there was no ex post facto violation as alleged in the petition.

## II.  BACKGROUND

The facts of petitioner's life crime were set forth in the probations officer's report as follows.

On October 4, 1985, at approximately 2:30 a.m., the victim stopped his car at a gas station.  Petitioner's crime partner approached the passenger side of the car and asked for a ride.  The victim responded that he does not give rides to people.  Petitioner approached the driver's side of the car, pointed a gun at the victim, and ordered him to open the door.  Petitioner entered the vehicle by way of the driver's side door and sat in the rear seat while his crime partner sat in the front seat on the passenger side.  Petitioner ordered the victim to drive.  Shortly thereafter, he ordered the victim to stop the car and get out.  Petitioner held him at gunpoint while his crime partner removed the victim's wallet from his pants pocket.  Petitioner and his crime partner then fled in the victim's car.  (Ex. B[1] at 2-3.)

Petitioner was sentenced to a life term with the possibility of parole.  (Ex. A at 2.) His minimum eligible parole date passed in 1994.  On April 7, 2005, the Board of Parole Hearings conducted an eighth subsequent parole suitability hearing and once again found him unsuitable for parole.  Petitioner properly raised his claim arising from the Board's denial with the Los Angeles County Superior Court and the California Supreme Court.  Those petitions were denied.  (Ex. F & H.)

## III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

---

[1] All citations to exhibits refer to the exhibits attached to respondents answer, filed 7/17/07.

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## IV.  DISCUSSION

### A.  Due Process and Parole

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, in and of itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*,

454 U.S. 14, 17-21 (1981). However, where a state's statutory scheme uses mandatory language, it "'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)). The Ninth Circuit has conclusively determined that California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date." *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

        B.    "Some Evidence" Standard

The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16. In addition, the Ninth Circuit has determined that existing Supreme Court law clearly establishes that a parole decision must be supported by some evidence. *Sass*, 461 F.3d at 1128-29; *McQuillion*, 306 F.3d at 904.

Petitioner does not contest that he received notice of his April 7, 2005 parole hearing, an opportunity to appear, and a copy of the decision rendered by the Board. The only remaining issue is whether some evidence supported the decision.

Under the some evidence standard, a decision cannot be "without support" or "arbitrary." *McQuillion*, 306 F.3d at 904 (*citing Superintendent v. Hill*, 472 U.S. 445, 457 (1985)); *Biggs*, 334 F.3d at 915. It must have some indicia of reliability. *Id*. The standard is "minimally stringent," and a decision must be upheld if there is any evidence in the record that

could support the conclusion reached. *Powell v. Gomez*, 33 F.3d at 40 (*citing Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). Examination of the entire record is not required. *Id*. The Supreme Court has specifically directed reviewing courts not to assess the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The only relevant question is whether there is *any* reliable evidence in the record that could support the decision reached. *See Id*.; *Toussaint*, 801 F.2d at 1105.

Petitioner has set forth several factors and circumstances which he believes support the conclusion that he is suitable for parole. This court is precluded by the some evidence standard of review from comparing and contrasting the evidence in favor of parole suitability and the evidence disfavoring parole suitability in order to decide this case. *See Hill*, 472 U.S. at 455. The task at hand is limited to determining whether there is at least one piece of reliable evidence to support the state court's decision.

   C. California Law on Parole Suitability Determinations

In evaluating whether the Board's finding of parole unsuitability was supported by some evidence, the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. The court is bound by California's construction of its own laws in this regard. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The court "must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [ ] constituted an unreasonable application of the 'some evidence' principle." *Id*.

Title 15, Section 2281 of the California Code of Regulations sets forth factors to be considered by the Board regarding parole suitability findings for life prisoners. The regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008). The Board is directed to consider all relevant,

reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs. tit. 15, § 2281(b). The regulation also lists various circumstances that may tend to show suitability or unsuitability for parole. Cal. Code Regs. tit. 15, § 2281 (c) and (d).

Circumstances that may tend to show unsuitability for release are as follows: (1) the offense was committed in an especially heinous, atrocious, or cruel manner; (2) previous record of violence; (3) unstable social history; (4) the crime was a sadistic sexual offense; (5) lengthy history of severe mental problems related to the offense; and (6) serious misconduct in prison. Cal. Code Regs. tit. 15, §2281(c). Circumstances that may tend to show suitability for parole are set forth as follows: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) significant stress as a motivation for the crime; (5) battered woman syndrome; (6) lack of criminal history; (7) age; (8) understanding and plans for future; (9) positive institutional behavior. Cal. Code Regs. tit. 15, §2281(d).

The overriding concern in determining parole suitability is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, "the proper articulation of the standard of review is not whether some evidence supports the *reasons* the Board cites for denying parole, but whether some evidence indicates that the prisoner's release would unreasonably endanger public safety. *See In re Lawrence*, 44 Cal.4th at 1254.

        D.     Individual Factors relied upon by the Board

The Board determined that petitioner would pose an unreasonable risk to public safety if released from prison. The parole unsuitability determination was based on several factors, including (1) the nature of the commitment offense; (2) petitioner's extensive criminal

history; and (3) his institutional behavior.

Under the relevant regulation, the nature of the commitment offense may be an unsuitability factor where (A) multiple victims were attacked, injured or killed; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; or (E) the motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs. tit. 15 §2281 (c)(1)(A)- (E).

While the focus under California law is the current dangerousness of the inmate, the gravity of the commitment offense can be a sufficient basis for denying parole where the facts are especially heinous or particularly egregious. *In re Rosenkrantz*, 29 Cal.4th 616, 682 (2002); *see also Biggs v. Terhune*, 334 F.3d 910, 913-16 (9th Cir. 2003); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006); *Irons v. Carey*, 505 F.3d 846, 852-53 (9th Cir. 2007).[2] The relevant inquiry is an individualized one: "whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense." *In re Lawrence*, 44 Cal.4th at 1221.

Regarding this factor, the presiding commissioner stated for the Board:

> The offense was carried out in a dispassionate manner. Kidnaping is abusive behavior, if not physically, certainly psychologically. So certainly from that perspective the victim was abused. The motive for the crime was inexplicable...

The conclusion was drawn from the Statement of Facts wherein on

---

[2] In another case, *Hayward v. Marshall* (512 F.3d 536, 546-47 (9th Cir. 2008), a panel of the Ninth Circuit determined that under the "unusual circumstances" of that case, the unchanging factor of the gravity of the petitioner's commitment offense did not, by itself, constitute some evidence supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals vacated the decision in order to rehear it en banc. *Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in *Hayward* is no longer citable precedent.

> October 4, 1985 the victim David Jones apparently pulled in a gas station on Figueroa Street. The prisoner's crime partner, Ms. Cox, approached him. Allegedly the victim said, I don't give rides. The prisoner got into the back of the car with a weapon. The bottom line is he kidnaped him and drove to a location and ordered the victim out of the car and took his car.

(Exhibit C at 66.)

The Board concluded that petitioner's motive was inexplicable, but did not explain its reasoning. In order to fit the regulatory description of this unsuitability factor, the prisoner's motive must have been *more* trivial than those which conventionally drive people to commit the offense in question. *In re Scott*, 119 Cal.App.4th 871, 893 (2004) (reasoning that all motives for murder could reasonably be deemed trivial). Because kidnaping is such a serious crime, virtually all offenders who commit that offense for the purpose of committing robbery could be said to have an inexplicable or extremely trivial motive. Along the same lines, almost any serious crime involving one or more victims could be characterized as dispassionate or psychologically abusive toward the victim(s). Although petitioner's kidnaping for robbery offense was certainly grave and serious, the record does not support a finding that it was carried out in an *especiall*y heinous or cruel manner such that it would by itself continue to be predictive of his current dangerousness after this many years.

Thus, there is no reliable evidence in the record that petitioner is unsuitable for parole dangerous based solely on the nature of his commitment offense. But the Board did not rely solely on the commitment offense in determining that petitioner was unsuitable for parole. The Board was also troubled by petitioner's escalating criminal history and his serious misconduct in prison. There is some reliable evidence in the record to support the Board's findings with respect to those factors.

Petitioner has multiple arrests and convictions in his record. As a juvenile, he was arrested for taking a vehicle without the owner's consent in 1971, battery in 1971, burglarizing a store in 1972, possession of a switchblade in 1972, attempted purse snatching in 1972,

possession of marijuana in 1972, threatening a teacher in 1973, possession of marijuana in 1973, and receiving stolen property in 1974. (Ex. C at 12-18.) As an adult, he was arrested for attempted murder in 1975. (*Id*. at 18.) The case was dismissed after the victim accidently shot and killed himself prior to trial. (*Id*. at 19.) In 1976, he was arrested again for possession of marijuana. (*Id*. at 20.) Also in 1976 petitioner was convicted of receiving stolen property and received two years formal probation and 90 days in the county jail. (*Id*. at 21.) In 1978 he pleaded guilty to burglary in the second degree and received three years formal probation and 90 days in the county jail. (*Id*. at 22.) In 1980 petitioner was convicted of grand theft auto. (*Id*. at 25.) He spent two days in jail and was again placed on probation for two years. (*Id*.) After another grand theft conviction in 1982, he was placed on three years formal probation with the first 180 days to be served in county jail. (*Id*. at 26.) While on probation, petitioner committed his life offense. (*Id*.) Also during this time period, it appears that he was charged with another robbery at gunpoint of a different victim. (*Id*. at 26-27.)

  At the time of his parole hearing, petitioner had amassed a total of 32 disciplinary reports during his incarceration, including 22 CDC 128(a) reports and 10 CDC 115 reports. (Ex. C at 33-34.) The most serious occurrence was in 1988, when he was assaulted another inmate with a weapon. (*Id*. at 34.) The other inmate was stabbed and cut several times with a four and a half inch knife. (*Id*.) More recently, petitioner was cited on May 25, 2001 for disrespect or threatening behavior towards staff. On June 22, 2001, less than four years prior to the parole hearing at issue, he was cited for mutual combat with another inmate. (*Id*. at 33.)

  Based on the foregoing, there is some evidence in the record to support the Board's conclusion that petitioner remains currently dangerous based on his previous record of violence (Cal. Code Regs. tit. 15 §2281(c)(2)) and his continuing serious misconduct in prison (Cal. Code Regs. tit. 15 §2281(c)(6)) which has resulted in numerous disciplinary actions. The decision of the California Supreme Court upholding the Board's denial of parole is not contrary to, or an unreasonable application of any clearly established federal due process law.

E.   Ex Post Facto Clause

In addition to his due process claim, it appears that petitioner may also intend to raise a claim under the Ex Post Facto Clause. Specifically, petitioner alleges that the Board's denial of parole has caused his sentence to be retroactively altered to a life sentence without the possibility of parole.

The Ex Post Facto Clause prohibits legislatures from retroactively altering the definition of a crime or increasing the punishment for a criminal act. *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). Here, petitioner was convicted in 1986 of kidnaping for robbery, which carried a life term. He was sentenced to life with the possibility of parole; his sentence has not changed. While petitioner became eligible for parole in 1994, he has not yet been found suitable. This is not an ex post facto violation. So long as the decision by the Board is supported by some evidence, as it was in this case, it cannot be said that the Board has effectively altered petitioner's life sentence.

V.   CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 22, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE